**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Shanda M.,

Plaintiff,

v.

Franks Bisignano,
Commissioner of Social Security,

Defendant.

No. 25-cv-2935 (DLM)

**ORDER**

Plaintiff Shanda M. seeks judicial review of the Commissioner of Social Security's ("Commissioner") final administrative decision under 42 U.S.C. § 405(g) to deny her Social Security disability insurance benefits ("DIB"). The Commissioner denied Plaintiff benefits after an Administrative Law Judge ("ALJ") decided that she did not qualify as disabled under the Social Security Act. She argues that the Commissioner's decision is not based on substantial evidence as § 405(g) requires, and the denial of her claim for benefits amounts to reversible legal error.

Plaintiff asserts that in reaching her decision, the ALJ committed two errors: first by failing to incorporate the limitation for less than occasional stooping from the persuasive prior administrative medical findings into Plaintiff's Residual Functional Capacity ("RFC"); and second, by failing to evaluate the persuasiveness of the medical opinions in accordance with 20 C.F.R. § 404.1520c. The matter is now fully submitted. (Docs. 11 (Plaintiff's Brief), 15 (Commissioner's Brief).) For the reasons stated below, the Court affirms the Commissioner's denial of benefits.

## BACKGROUND

In June 2022, Plaintiff Shanda M. applied for DIB under Title II, alleging disability beginning on May 5, 2022. (Tr.[1] at 30). The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon her request for reconsideration. (Tr. at 94-105 (initial denial), 107-19 (reconsideration).) Plaintiff then timely requested a hearing before an ALJ (Tr. at 139-40), and the ALJ held a hearing on February 14, 2024 (Tr. at 58-92). Plaintiff was represented by an attorney, appeared at the hearing, and testified on her own behalf. (Tr. at 60-83.) A vocational expert also testified, opining that there were at least three representative jobs in the national economy that a person with ailments and limitations like Plaintiff's (at least as described by the ALJ) could still perform. (Tr. at 83-91.)

On April 9, 2024, the Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 27-29 (notice), 30-45 (decision).) In her decision, the ALJ recognized that Plaintiff suffered from several severe impairments, including degenerative disc disease of the lumbar spine (status post minimally invasive right L4-5 decompression hemilaminectomy and discectomy); tarsal tunnel syndrome in the right lower limb; depression; and anxiety. (Tr. at 32.) Despite these impairments, the ALJ determined that Plaintiff retained the RFC[2] to perform light work[3] with the following additional limitations:

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on September 22, 2025. (Doc. 5.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

[2] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[3] By regulation, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

occasional climbing of ladders, ropes, and scaffolds; occasional stooping, kneeling, and crouching; and frequent climbing of ramps, stairs, and crawling; never work in a setting that requires occasional exposure to or use of hazardous moving machinery such as power saws or jackhammers; can understand, remember, and apply information to complete simple and detailed instructions in a routine work environment with no hourly quotas. (Tr. at 35.)

The ALJ discounted Plaintiff's statements of impairment because she found them "not fully consistent with the medical record." (Tr. at 36.) The ALJ stated while the record was consistent with some work limitations due to Plaintiff's "history of back pain, weakness in the legs, and depression and anxiety" she "appeared to have some improvement following a minimally invasive back procedure in October 2022, and appeared to have improvement following a right ankle procedure in March 2023." (Tr. at 36.) The ALJ then recounted some of Plaintiff's activities of daily living including driving and walking her dog for 30 minutes. (Tr. at 36.) The ALJ also summarized Plaintiff's medical records, which indicated that Plaintiff continued to receive treatment for pain but that "examinations consistently noted that" Plaintiff "had normal gait and could perform tandem and heel to toe walking"; "have not shown atrophy of the muscles to support" Plaintiff's "allegation that she needs to lie down or sleep for 25% of the day"; and "[t]reatment notes have also indicated that psychotropic medications have helped, and the

be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

record does not indicate a high degree of medication side effects." (Tr. at 36.) The ALJ concluded that "the medical record shows a greater level of functioning than generally alleged and is consistent with the ability to perform a limited range of light work." (Tr. at 36.) The ALJ explained that she accommodated Plaintiff's "degenerative disc disease, radiculopathy, and right foot weakness in the residual functional capacity through the limitation to a light exertional level, the postural limitations, and the environmental limitations." (Tr. at 39.) The ALJ also considered Plaintiff's "mental impairments in the residual functional capacity through the finding that" Plaintiff "can complete simple and detailed instructions in a routine work environment." (Tr. at 41.)

Relying on the vocational expert's testimony, the ALJ determined that Plaintiff "could perform her past relevant work as a waitress as generally performed." (Tr. at 44.) In addition to her past relevant work, the ALJ also found that Plaintiff could perform the following occupations as described in the Dictionary of Occupational Titles ("DOT"): cleaner (DOT 323.687-014); marker (DOT 209.587-034); and information clerk (DOT 237.367-018). (Tr. at 44.) Consequently, the ALJ found Plaintiff was not disabled. (Tr. at 45.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. at 14.) This made the ALJ's decision the final decision of Commissioner for the purpose of judicial review.

Plaintiff now seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. Plaintiff does not assert that the ALJ failed to follow

the five-step sequential process laid out in 20 C.F.R. § 404.1520(a) for evaluating DIB.[4] Rather she argues the Commissioner's decision is legally flawed because she erred twice when formulating the RFC: (1) the ALJ failed to explain why she did not include in the RFC a limitation contained in prior administrative medical findings; and (2) the ALJ did not adequately explain why she found medical opinions from Dr. Kaul and Dr. Martinez-Kaigi unpersuasive.

## ANALYSIS

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must decide next (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes that a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a).

administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

## I. THE ALJ'S OMISSION OF A LESS THAN OCCASSIONAL STOOPPING LIMITATION FROM THE RFC WAS HARMLESS.

In February 2023, medical consultant Gregory Bartel, M.D., completed a physical RFC assessment as part of the initial review of Plaintiff's DIB application. (Tr. 101-02.) Relevant here, after reviewing Plaintiff's medical records, Dr. Bartel determined that Plaintiff could stoop (i.e., bending at the waist) occasionally, but "[b]ending at the waist would need to be less than occasional and not repetitive" and "[s]tooping could be for up to 1 hour/day spread out over the 8-hour workday." (Tr. at 102.) Upon reconsideration, medical consultant Gregory Salmi, M.D., agreed. (Tr. at 115.) The ALJ found Drs. Bartel's and Salmi's opinions persuasive. (Tr. at 42.) The ALJ explained that their opinions were "supported by the detailed summary and analysis of the evidence reviewed" and "mostly consistent with medical examinations." (Tr. at 42.) But when the ALJ assessed Plaintiff's RFC, she did not limit Plaintiff to less than occasional stooping, only occasional stooping. (Tr. at 35.) Nor did the ALJ explain why she found a less than occasional stooping limitation unsupported or inconsistent with the record. (*See* Tr. at 42.)

Plaintiff, relying on *Mark S. E. v. Kijakazi*, No. 20-cv-1954 (JFD), 2022 WL 834513, at *5 (D. Minn. Mar. 21, 2022), argues that the ALJ erred in assessing her RFC

because the RFC did not specifically include a less than occasional stooping limitation, but instead limits Plaintiff to "occasionally" stooping. The ALJ's failure to include this limitation in the RFC, Plaintiff says, led to a defective hypothetical presentation to the vocational expert, which in turn led to the Commissioner's decision being unsupported by substantial evidence. According to Plaintiff, because the ALJ found the opinions persuasive she "should have either included the [less than occasional stooping] limitation in the RFC or explained the decision to omit it." *Mark S. E.*, 2022 WL 834513, at *5. The ALJ's failure to do either, Plaintiff insists, warrants remand.

The Commissioner responds that there is no error here. According to the Commissioner, the doctors' stooping limitation falls within the SSA's and the DOT's definition of occasional: existing up to one-third of the time. *See* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) (occasional is from "very little up to one-third of the time"); *see also Owens v. Colvin*, 727 F.3d 850, 851-52 (8th Cir. 2013). Thus, from the Commissioner's view, the ALJ properly accounted for the doctors' stooping limitation in the RFC. But, the Commissioner says, even if the Court concludes that the ALJ failed to sufficiently explain her omission of a less than occasional limitation from the RFC, the omission and lack of explanation are harmless, and remand is therefore unjustified. The Commissioner contends that because stooping is not present for waitress (DOT 311.477-030, Stooping: Not Present - Activity or condition does not exist); marker (DOT 209.587-034, Stooping: Not Present - Activity or condition does not exist), or information clerk (237.367-018, Stooping: Not Present - Activity or condition does not exist), and present only up to one-third of the time for cleaner (DOT 323.687-014, Stooping: Occasionally -

Exists up to 1/3 of the time), the ALJ's ultimate determination would have been unchanged even if she had included a less than occasional stooping limitation in the RFC.

This Court finds, as in *Mark S. E.*, that the ALJ omitted the doctors' stooping limitation from the RFC without explanation. 2022 WL 834513, at *5. But unlike *Mark S. E.*, this Court concludes the omission is harmless. In *Mark S. E.*, the court reversed the Commissioner's decision, having concluded that "[t]he omission of the limitation is significant" because "if the [limitation] had been included in the RFC, [the jobs the ALJ found Mark S. E. could perform] would not have been available to Plaintiff." *Id*. Here, however, even if the ALJ had included a less than occasional stooping limitation in the RFC, the jobs the ALJ found Plaintiff could perform would still be available to her because neither waitress, marker, nor information clerk include stooping as an activity at all, and for cleaner stooping exists only up to one-third of the time (within the doctors' opined limitation). Because the vocational expert only identified jobs that accommodated Plaintiff's less than occasional stooping limitations, the ALJ's omission of a less than occasional limitation from Plaintiff's RFC "could not have affected the outcome of Plaintiff's disability determination." *Jillian N. v. Bisignano*, No. 24-cv-04375 (PJS/DJF), 2026 WL 1045233, at *7 (D. Minn. Jan. 20, 2026), *R. & R. adopted sub nom. N. v. Bisignano*, 2026 WL 575704 (D. Minn. Mar. 2, 2026) (citing *Austin*, 52 F.4th at 729). This Court concludes that the ALJ's omission was harmless.

## II. THE ALJ PROPERLY EVALUATED DR. KAUL'S AND DR. MARTINEZ-KAIGI'S MEDICAL OPINIONS.

Plaintiff also contends that the ALJ failed to evaluate the supportability and

consistency of medical opinions from Sakshi Kaul, M.D., and Valeria Martinez-Kaigi, Ph.D. Moreover, Plaintiff argues, the ALJ's error is not harmless because had she included Dr. Kaul's and Dr. Martinez-Kaigi's opined limitations in the RFC, Plaintiff would have been precluded from competitive employment and found to be disabled. The Commissioner sees things differently, asserting that the ALJ found Dr. Kaul's and Dr. Martinez-Kaigi's opinions not persuasive only after considering the entire record evidence. The Commissioner insists that Plaintiff focuses her view too narrowly on a particular portion of the record but, according to the Commissioner, the ALJ sufficiently articulated the record evidence that supported and was consistent with her findings.

This Court's review of an ALJ's analysis of medical opinions is limited to determining whether the ALJ followed the regulations outlined in 20 C.F.R. § 404.1520c. *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025). Under that regulation, an ALJ analyzes a medical opinion's persuasiveness, which turns on multiple factors, the most important being supportability and consistency. *Id*. This Court's job, therefore, is to determine "whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors" not to determine whether the Court "agree[s] with the ALJ's evaluation of the record evidence on those issues." *Id*. (citing *Austin*, 52 F.4th at 728-30). An ALJ must only "make it clear that these factors were considered and explain [her] reasoning clearly enough to allow for appropriate judicial review." *Manesha F. v. Bisignano*, No. 25-cv-849 (JRT/DJF), 2026 WL 385991, at *6 (D. Minn. Jan. 15, 2026), *R. & R. adopted*, 2026 WL 383745 (D. Minn. Feb. 11, 2026) (quoting *Cropper*, 136 F.4th at 814) (cleaned up).

The ALJ determined that Dr. Kaul's and Dr. Maritnez-Kaigi's medical opinions were not persuasive. She explained that "Dr. Kaul's opinion is not supported" because it "did not refer to any specific examination findings" and only "generically stated" that Plaintiff "had had back surgery" but failed to note that the surgery was a "minimally invasive microdiscectomy." (Tr. at 42.) The ALJ also explained that Dr. Kaul's opinion was "not consistent with physical examination findings" that Plaintiff had "had normal gait, could perform tandem and heel/toe walking, could stand on heels and toes, is able to squat and rise, was able to raise her arms overhead, and has mostly normal muscle strength." (Tr. at 42 (citing Tr. at 453, 565).) The ALJ's analysis of Dr. Martinez-Kaigi's treating source statement was similarly limited to her finding that the "opinion was not supported by specific objective findings" and only noted the Plaintiff's "physical, emotional, and psychological problems." (Tr. at 43 (citing Tr. at 697-701).) The ALJ explained that Dr. Martinez-Kaigi's "opinion is also not consistent with findings of intact cognitive functioning, the claimant's ability to perform activities such as driving and walking her dog, and with the claimant's statements that psychotropic medications have helped." (Tr. at 43 (citing Tr. at 582, 739).)

The ALJ's analysis of these opinions is brief, but "brevity is not reversible error." *Cropper*, 136 F.4th at 815 (quoting *Grindley*, 9 F.4th at 631)). Moreover, the ALJ's analysis cannot be isolated from the rest of the decision and removed from its overall context. The ALJ's persuasiveness analysis "must be read in the context of the decision in its entirety." *Manesha F.*, 2026 WL 385991, at *6 (quoting *Troy L. M. v. Kijakazi*, No. 21-cv-199 (TNL), 2022 WL 4540107, at *12 (D. Minn Sept. 28, 2022)). "When substantial

evidence in the record as a whole supports the ALJ's persuasiveness analysis, the ALJ's decision should not be disturbed." *Id*. (quoting *Cropper*, 136 F. 4th at 813-14) (cleaned up).

Elsewhere in her decision, the ALJ discussed evidence that was inconsistent with Dr. Kaul's opined limitation that Plaintiff was limited to "lift/carry less than 5 pounds occasionally and 2 pounds frequently; can stand for less than 2 hours at a time in an 8-hour workday and for 20 minutes at a time, can sit for 15 minutes at a time, has limitations with pushing/pulling with both the upper and lower extremities, has limitations with neck movements; can never climb ladders/ropes/scaffolds, crouch, or stoop, and can occasionally perform other postural activities; has visual and communicative limitations; and has environmental limitations." (Tr. at 42 (citing Tr. at 693-96).) Specifically, the ALJ noted that "[t]he record indicates work limitations from the claimant's history of back pain and weakness in the legs. However, the record also indicates that treatment has helped." (Tr. at 39 (citing Tr. at 656, 732-46).) Additionally, the ALJ stated that "examiners consistently noted" that Plaintiff "could walk without assistive devices, had normal muscle strength in the upper extremities, and had normal to 4/5 strength in the lower extremities" and "was able to perform activities such as driving and walking her dogs for 30 minutes." (Tr. at 39 (*see* Tr. at 434, 451, 575.) The ALJ also noted medical examination findings showing that Plaintiff had "a normal neurologic examination, had normal gait, could perform knee bend, and normal motor strength in all extremities, had normal sensation, and had mostly normal range of motion testing" with "no instability and no evidence of neurologic dysfunction in either [foot]." (Tr. at 39 (citing Tr. at 565.) The ALJ also cited

medical examination evidence showing that Plaintiff's "back surgery was effective and she is able to walk without a limp." (Tr. at 39 (citing Tr. at 575.) Ultimately, the ALJ concluded that Plaintiff's ongoing treatment to manage her back pain indicated some work limitations, but physical examination results also show that treatment "can bring some pain relief" and Plaintiff can "perform some work activities despite her pain." (Tr. at 39.) Taking the record as a whole, the ALJ explained that she accounted for Plaintiff's "degenerative disc disease, radiculopathy, and right foot weakness in the residual functional capacity through the limitation to a light exertional level, the postural limitations, and the environmental limitations." (Tr. at 39.)

The ALJ also discussed elsewhere in the decision evidence that was inconsistent with Dr. Martinez-Kaigi's opined marked mental limitations. The ALJ noted medical record evidence that Plaintiff "continues to be motivated about treating her depression in the context of chronic pain." (Tr. at 41 (citing Tr. at 703).) The ALJ also noted that "mental health treatment notes continue to note mental improvement with medication adjustments." (Tr at 40.) The ALJ cited mental status examination evidence showing Plaintiff had "intact cognitive functioning" along with Plaintiff's own statements that medications "can help" which "indicate that [Plaintiff] has the mental ability to perform some work related tasks." (Tr. at 40 (citing Tr. at 741).) Further, the ALJ noted that examination records showing "normal MMSE [Mini-Mental State Examination] scores" and statements that medication has helped "indicate her depression is manageable." (Tr. at 40 (citing Tr. at 739).) The ALJ concluded that "[i]ntact cognitive findings and evidence of improvement with treatment and psychotropic medications indicate that the claimant has the mental ability to perform

some work." (Tr. at 41.) The ALJ then explained that she accommodated Plaintiff's mental impairments in the RFC with the finding that Plaintiff "can complete simple and detailed instructions in a routine work environment." (Tr. at 41.)

Plaintiff argues that the ALJ "cherry-picked" evidence to support her conclusions with respect to both Dr. Kaul's and Dr. Martinez-Kaigi's opinions. But as Plaintiff acknowledges, the ALJ is not required to discuss every piece of evidence in the record. *See Benjamin G. v. Bisignano*, No. 25-cv-3961 (DJF), 2026 WL 2491756, at *5 (D. Minn. Aug. 25, 2026). While Plaintiff may disagree with the ALJ's findings, the Court will not reverse if substantial evidence exists in the record to support the ALJ's RFC findings. *See Austin*, 52 F.4th at 730. Even if substantial evidence exists to support a "contrary outcome," so long as the ALJ's decision falls within the "available zone of choice" the Court will not disturb the result. *Id*. at 728.

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Kaul's and Dr. Martinez-Kaigi's opinions to the record, and the ALJ's explanation was clear enough to permit judicial review, in accordance with 20 C.F.R. § 404.1520c. Additionally, the ALJ discussed the evidence thoroughly and explained how it supported her RFC determination. The Court therefore declines to reweigh the evidence.

## ORDER

Based on the above findings, as well as the files, records, and proceedings above, **IT IS ORDERED**:

1. Plaintiff's request for reversal (Doc. 11) is **DENIED**; and

2. The Commissioner's request for affirmance (Doc. 15) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 18, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge